Bicknell *v.* Trickey.

---

BICKNELL *versus* TRICKEY & *al.*

In determining what shall constitute an attachment, regard must be had to the nature of the property, its situation, the expenses of a removal, and to the kind of possession of which it is susceptible.

Thus, to preserve an attachment of mill logs, found in a river or upon its banks, it is not necessary that there should be the same manual possession or the same constancy and extent of supervision, as would be requisite in case of many other sorts of property, less cumbrous and more easily moveable.

A laborer's claim of lien on lumber is defeated, if, in the judgment which he recovers for it, any non-lien claims are also included.

When a creditor's demand is partly upon a lien claim, and partly upon a non-lien claim, he may maintain separate actions, with a recovery of cost in each, notwithstanding the general rule of allowing cost in one suit only, if the matters sued might have all been united in one action.

On REPORT from *Nisi Prius*, TENNEY, J. presiding.

TROVER for 6000 mill logs. The defendants pleaded the general issue severally.

Evidence both documentary and oral was introduced by the respective parties, though much of it was objected to. The case was then withdrawn from the jury and submitted to the Court to be decided upon such of the evidence as was

legally admissible, with power to draw inferences of fact as a jury might do.

The decision does not indicate what part of the evidence, if any, was inadmissible.   But that which was rightfully admitted appears, in the estimation of the Court, to have established substantially the following facts.

The defendants owned timber land.   They employed one Decker to cut logs upon it, and to haul them to the river in the forest, and to drive them down the river to the Penobscot boom, at an agreed price per thousand feet.   It was a part of the contract that Decker should pay all the laborers whom he should employ, or procure their release of all liens upon the logs.   Decker associated one Tewksbury with himself in the work, and they jointly cut, hauled and drove the logs, and reached the boom with them in the fall of 1849.

The defendants paid Decker for the whole work according to the contract.   But the laborers were not paid, nor had they relinquished their liens.

Soon after the logs arrived at the boom, the defendants, the owners of the logs, at a pitch of high water, in November, drew them upon the Eastern shore of the river, in Milford and Oldtown.

Afterwards, in the same November, seven of the laborers sued out their respective writs, upon accounts for their services, against Decker and Tewksbury ; and caused the logs to be attached thereon.   Some of these accounts contained items of charge other than lien claims.   The attachments were made December 6, 1849.

In February, (after the attachments,) Trickey, one of the defendants, sold all his rights in the logs to Cushing, the other defendant.   On the 2d of May, 1850, being after the sixty days allowed for enforcing a lien upon lumber, three other of the laborers instituted suits for their services, and caused the logs to be attached subject to the previous attachments.   About the sixth of May, the defendant Cushing, one of the owners, notwithstanding the alleged attachments, took

the logs to his own mill in Frankfort, and applied them to his own use.

The plaintiff is the deputy sheriff, by whom the attachments were all made. Subsequently to said month of May, judgment was recovered by default in each of said actions, ten in number, and the executions were placed in the hands of the plaintiff, with orders to sell the logs. Not being able to find the logs, he brought this action of trover for them.

The manner in which he attempted to *make* the attachments and to *preserve* them; and also the evidence by which he claims to connect Trickey with the conversion of the logs, will appear in the opinion of the Court.

*C. P. Brown,* for the plaintiff.

*McCrillis* and *Crosby,* for the defendants.

1. Trickey is not liable. The defendants pleaded severally. After the attachment, Trickey sold his interest to Cushing, who alone took the logs. The owner of personal property attached may make a valid sale and, if permitted, a valid delivery, subject to the attachment lien. *Nichols* v. *Patten,* 18 Maine, 232; *Fettyplace* v. *Dutch,* 13 Pick. 388; *Dunny* v. *Willard,* 11 Pick. 519, 525; *Arnold* v. *Brown,* 24 Pick. 89; *Whitaker* v. *Sumner,* 20 Pick. 399, 405; *Whipple* v. *Thayer,* 16 Pick. 25, 27.

2. The suits, upon which the last three attachments were made, were commenced long after the time, in which liens on lumber must be enforced.

3. No sufficient attachment of these logs was made; or if made it was abandoned. R. S. chap. 114, § 39, 40; *Nichols* v. *Patten,* 18 Maine, 232, 238; *Waterhouse* v. *Smith,* 22 Maine, 337; *Weston* v. *Dorr,* 25 Maine, 182; *Wheeler* v. *Nichols,* 32 Maine, 233, and the cases cited on page 240; *Sanderson* v. *Edwards,* 16 Pick. 144.

4. There has been a fraudulent alteration of the officer's return on the back of all but the three writs on which he made the last attachments.

The return of the officer is only *prima facie* evidence that he has done what his return shows.

5. The lien of laborers does not extend to cases where the operators are trespassers.

Decker and Tewksbury were trespassers. The contract with Trickey was made with one of them only. That one took the other in as a partner.

A permit to cut timber cannot be assigned. *Emerson* v. *Fiske*, 6 Maine, 200.

The opinion of the Court, SHEPLEY, C. J., WELLS, RICE, HATHAWAY and APPLETON, J. J., was drawn up by

APPLETON, J. — The plaintiff, a deputy sheriff, having writs in his hands against John P. Decker & al., attached or claimed that he attached, on the sixth of Dec. 1849, five thousand logs in the Penobscot river, opposite the head of Indian Oldtown islands, upon which the several plaintiffs in those writs had a lien by virtue of " an Act giving laborers on lumber a lien thereon," approved Aug. 10, 1848. He went on to the logs, marked some of them " attached Dec. sixth, 1849, by A. H. Bicknell, deputy sheriff, for men, who have a lien for their labor," and made a return of his doings on the several precepts in his hands. Of these proceedings he seasonably notified the general owners of the lumber. He further requested Charles P. Brown, the attorney for the plaintiffs in those suits in which the attachments had been made, to take a general oversight of the logs, which he agreed to do, and occasionally during the winter went up to look after and see that no one interfered with them. The defendants, who were the general owners of the lumber, requested the plaintiffs not to keep any one upon the logs, as that would cause unnecessary expense. On the second day of May following, additional writs were placed in the plaintiff's hands, who went on to the logs and attached them, subject to prior attachments. On the sixth of May, or about that time, the defendant, Cushing, drove the logs in dispute to his mills in Frankfort, for the purpose of manufacturing them.

Some of the prominent facts have thus been briefly indi-

cated.    Reference will be had hereafter to others material for the just determination of the rights of the parties.

That upon the facts proved an attachment has been made, cannot be a matter of doubt.    The officer went on to the logs, marked a part as attached, made a return of all, and gave notice to the general owners of his proceedings.    In determining what shall constitute an attachment, regard must be had to the nature of the property, its situation, the expenses of removal and to the kind of possession which the owner retains of it.    The officer may be rash in attaching property exposed as this must necessarily be, but if he assumes the risks incident to its retention and preservation, he should in this, equally, as in other cases, receive the protection of the law. The proceedings of an officer must necessarily differ in case of attaching logs floating on the waters of a river or lying on its banks, from what they would be in reference to the attachment of goods on the shelves of a store.    *Hemenway* v. *Wheeler*, 14 Pick. 408.    If the property had not been liable to attachment, the officer by his interference with the logs had done enough to render himself responsible for their value to the owner, and if they were attachable for these debts, to the plaintiffs in the several writs he had for service, so that he was holden to one or the other for the property accordingly, as either event might happen.    It is difficult to perceive what more, under the circumstances, the officer could have done in making an attachment.    He was not merely in view of the logs but he was on them with power of controlling them and of taking them into his possession, so far as in reference to this description of property it could conveniently be done.    *Nichols* v. *Patten*, 18 Maine, 238 ; *Mills* v. *Camp*, 14 Conn. 219.

It is not denied, that the identical logs upon which the several laborers who had been employed in cutting and hauling had a lien, have been attached.    It is well known, that logs for the purpose of identification are designated by various, distinct and separate marks.    The officer, it is alleged, originally in his return misdescribed these marks, and subse-

quently made alterations therein, so that they should corres-
pond with those actually on the lumber attached. The de-
fendants insist that this is proved by a comparison of the copies
of the returns left with the town clerks of Milford and Old-
town, with the originals on the writs. But the evidence
offered does not necessarily establish this fact. The returns
and copies are both official acts, and have equal claims to
official verity. The logs might have been described by right
marks in the original returns, and the difference may be
accounted for as the result of haste or carelessness on the part
of the officer.

But if the fact of an alteration had been established, the
consequences claimed to result, that thereby, the attachment
was lost, might not follow, if the officer had preserved it by
retaining possession. While the writ is in the hands of the
officer, and before its return, he may correct any error, or sup-
ply any omission, so that thereby it may more entirely corres-
pond to the truth. If in a large attachment, articles should
be omitted by mistake, or an error in quantity should occur,
while the process was in his hands, and before its return, the
officer might correct any mistake which had arisen in the
pressure of business. He is liable to all parties for the truth
or falsehood of his return, and until that is made, and the
return day has arrived, the correction of errors is in his hands
subject to his legal responsibilities. After the return day, and
when the process is in the presumed custody and under the
control of the Court, he would not have authority to vary in
any way his returns, except by its permission. The identity
of the logs, subject to the lien, with those attached being un-
disputed, the necessity of particularly describing them did not
exist. They were in his possession by the act of attach-
ment, and there was no need of designating any marks to make
the attachment valid. If it were necessary to correct the
misdescription arising from the omission of a mark, the officer
might well do it while the process was in his hands and before
its return.

If an attachment has been made, still the defendants claim

that it has been abandoned. The plaintiff, to show that it is still in force, relies on the provisions of R. S. chap. 114, § 39, as well as on a continued possession of the property attached. In ordinary cases a change of possession follows an attachment, and in such cases officers, and all who may be interested in knowing, are advised of the lien thus created upon the property attached. One object of this section would seem to be to provide a substitute for this change of possession and the notice therefrom resulting. The returns on the writs describe the marks of the logs with accuracy, while the copies to the clerks of Milford and Oldtown differ in the omission or transposition of some of the marks which the owners affixed to the logs as essential to their identification. The defendants, therefore, deny the continued preservation of the attachment in consequence of this difference. Whether, if this was the only mode in which the attachment has been preserved, it would be sufficient for that purpose, it is not necessary now to determine, inasmuch as we rest our decision of this branch of the cause on other grounds.

The plaintiff, by his attachments as returned on the several precepts committed to him, assumed important liabilities to the defendants as well as to the several attaching creditors. The property thereby was under his control, and he was liable to all parties interested for the use of at least ordinary care for its protection and preservation. With obligations thus onerous assumed, from which he could in no way relieve himself, he appointed Mr. Brown to take charge of the logs, who testifies that he was there repeatedly, and that on the second day of May he was on the logs with the officer and caused additional attachments to be made, subject to the first. At this time the officer must be deemed to be in possession. Prior to this date there is not the slightest proof of any interference on the part of either of these defendants with the logs. Instead of that, the proof shows that they entered into negotiations in reference to a settlement of all the attachments which had been made before that date. The return of the officer on that day, negatives entirely the idea of an intentional aban-

donment on his part. That no one was specially placed and continued in the possession of the logs, other than Mr. Brown, was in consequence of the expressed wishes of the defendants that it should not be done. On or about the sixth day of May, the logs were removed by one of the defendants, with a full knowledge on his part of what had been done. No more should be required of an officer, for the preservation of his rights against the owner of property attached, than would be expected in the case of sale, so far as regards the continuance of possession. During a portion of the fall and winter, the logs were frozen in the ice and immoveable, or moveable with great labor and difficulty. No owner would keep a man on the watch day and night. The officer had, and continued a possession, such as would have sufficed for the general owner, and is equally entitled to protection. *Jewett* v. *Wyman,* 12 Mass. 300. " It is not necessary, to continue an attachment, that an officer or his agent should remain constantly in the actual possession." *Hemenway* v. *Wheeler,* 14 Pick. 408. There are no conflicting rights of creditors. Any removal of the property by the officer would have been attended with great and unnecessary expense, and would have been positively injurious to those interested. The attachment must be considered to have been preserved and the property to have remained in the possession and under the control of the officer, until its removal through the wrongful acts of the defendant Cushing.

The plaintiffs, in the several suits in which the logs were attached, claim to recover by virtue of " an Act giving to laborers on lumber a lien thereon." Irrespective of this lien, the logs were not liable to seizure on their behalf.

The statute provides that "any person who shall labor at cutting, hauling or driving logs, masts, spars or other lumber, shall have a lien on all logs and lumber he may aid in cutting, hauling or driving as aforesaid, for the stipulated amount to be paid for his personal services and actually due. And such lien shall take precedence of all other claims except liens reserved by the State of Maine or the Commonwealth of Mas-

sachusetts for their own use," &c. The rights given by this statute confer on the laborer special privileges, and he must strictly comply with its terms, if he would claim the benefit of its provisions. The owner of the lumber may have contracted for its hauling and may have fully paid the individual with whom such contract was made, yet by virtue of this statute, the laborers may interpose their claims and assert their liens, and he may thus be compelled to pay twice for the same services.

The proceedings under this statute are therefore to be viewed in a double aspect. So far as the debtor is concerned they are *in personam*, and, as against him, the plaintiff may insert any and all claims, which by law can be joined. So far as regards the general owner of the property, and against whom the laborer has no legal claim, when the person with whom he has contracted is other than the owner of the lumber, the proceedings are strictly *in rem*. Without contract, without personal liability on the part of the general owner, the laborer claims to seize his property to satisfy the debt of another. His rights and his position are different from that of the debtor with whom the contract to labor was made.

Now this being a proceeding, so far as concerns the general owner, strictly *in rem*, the laborer's rights, under the statute, depend upon the special claim thus protected, and upon continuing its identity as well as that of the property upon which it is imposed. No special rights are granted save to the lien claim, and only to its extent. No other property is liable except that upon which the lien attaches. This claim is distinct from and takes precedence of all others. The identity of claim and of property must coexist, and must be traceable till the fruits of the judgment have been obtained by a satisfaction of the execution. The identity of the property must be established, else the lien cannot attach ; the labor must be shown to have been done upon the specific property seized, for provision is made for nothing else.

In some of the suits the plaintiffs have obtained judgments in which debts for labor upon the property claimed as security

have been joined with others having a different origin. The question thus arises, as to what shall be the effect of this course on the enforcement of the rights conferred by this statute.

In this case the judgment is for one sum, the new debt which the plaintiff has is one and indivisible. The several distinct claims have become united and merged. In *Thompson* v. *Hewitt*, 6 Hill, 254, Bronson, J., says, "the original debt has been merged in and extinguished by the judgment. The judgment is a new debt not affected by the discharge." The laborer, instead of having a judgment for a distinct and separate claim has seen fit to prefer one not for his lien debt, but for an aggregate of claims of which that is a part. The original lien debt enters into and combines with other claims and it may constitute an indefinite and unascertainable fraction of his judgment. The same plaintiff may have a lien debt for labor on lumber, a lien debt for lumber furnished to his debtor in erecting a dwellinghouse, and another claim on account, each for the sum of one hundred dollars, and these may all be contested and the amounts so reduced that his judgment shall be only for the sum of one hundred dollars. His claims will in this event have been reduced two thirds. Now of these three several claims the jury may have negatived any two and allowed the third in its entirety, and they may have allowed any conceivable fractions of each, which upon addition shall make that sum. In what mode is the amount of the lien claim to be determined? Was the whole or none, or if any what fraction of the lien debt allowed? No possible mode of determining exists. To use the quaint but expressive language of the law, "the debt is drowned in the judgment." It henceforth becomes impossible to analyze the judgment, to ascertain the several items which go to make it up and redistribute and apportion them among the different species of property upon which the creditor has his several specific claims.

It has been determined in case of numerous defendants that whatever extinguishes or merges the debt as to one,

merges it as to all. *Roberts* v. *Smith*, 18 Johns. 478. " Taking a bond and warrant of attorney from one of two partners for a partnership debt extinguishes the liability of the other copartners. The debt as copartnership debt becomes merged in the judgment, and the individual liability of the judgment debtor in the place of the joint liability of the other partners." *Averill* v. *Loucks*, 6 Barb. 20; *Woodworth* v. *Spafford*, 14 Vermont, 447. NELSON, C. J., in *Pierce* v. *Kearney*, 5 Hill, 86, says, " the original security and consequently the remedy upon it becomes merged and extinguished by the higher security obtained through the judgment. The effect of the recovery, as it respects the further remedy against all the parties, does not turn upon the inquiry whether the merits of the claim have been determined, and so are *res adjudicata*, but upon the fact that by proceeding to judgment against one, the plaintiff has elected to change the nature of his security." In *Ward* v. *Johnson & al.* 13 Mass. 148, the Court say, that by the recovery of judgment in assumpsit the contract is merged.

Indeed all the analogies of the law are against the preservation of the lien after the lien debt shall have been joined with other claims, and been made a component part of a new judgment. The lien by attachment is only preserved by the continued identity of the creditor's claims. If under leave to amend new demands are added the lien acquired by attachment becomes vacated. *Clark* v. *Foxcroft*, 7 Greenl. 348. When the plaintiff elected to join a non-imprisonment cause of action with one of a different character, he shall be deemed to have elected to take his remedy against property alone, and not against both person and property, because the law will not allow him to prejudice the rights of the defendant by mingling his damages. *Miller* v. *Scherder*, 2 Coms. 268. The principle to be deduced from the last case, is that where a creditor has two classes of claims against his debtor, by uniting them in one suit and obtaining judgment, he reduces that in which his rights are superior to the level of that in which they are inferior; in other words, that by joining his lien debts with

others the lien is abandoned, and that claim ceases to have the priority of right upon property to which, without such joinder, it would be entitled.

It is insisted, that by R. S. chap. 115, § 93, the plaintiffs in the suits for labor were compelled to include all claims in one suit, at the peril of losing costs in any suit which might be commenced for other than the lien claims. The object of this section is to prevent the unnecessary multiplication of suits, by prohibiting the recovery of costs on more than one suit, "unless the Court shall certify that there was good cause for commencing them." But when the party has lien debts, and to enforce them is compelled to bring several suits against each piece of property upon which a separate lien attaches, this provision does not apply. In such case, as matter of right, he would be entitled to the certificate of the Court to enable him to recover his costs in each suit he might be compelled to bring to enforce his rights.

That the logs in dispute have been taken away by Cushing, and that if the attachment has been preserved, a right of action for their conversion as against him has accrued to the plaintiff, will not be questioned. The liability of Trickey is however denied. It is conceded that the defendants were jointly interested in the lumber at the time of its attachment. The evidence shows Trickey sold out to Cushing in the February after the attachment, of the existence of which both defendants were fully aware. In the winter, while, as has been seen, the attachment was in full force, Trickey told Johnson, who was in their employ, "that there was nothing to detain him from driving the logs;" and Johnson further adds, that " he should not have driven the logs unless he had had this information from Trickey." Brown testified that Cushing told him the day before the term of the Court at which the action was tried, that " he, Cushing, meant to have had this matter settled, and that Trickey of late had shown a disposition to work himself out of it, and that it would have been much more to his credit if he had never been connected with Trickey." It further appears that the defendant Trickey was

Bicknell *v.* Trickey.

present at the taking of the depositions used in this case, and that to the inquiry, on the part of the plaintiff's counsel, "if he meant to deny that they took these logs, he said they did not." The conclusion from the whole testimony is irresistible that Cushing in all he did, acted with the knowledge and concurrence of Trickey; that Trickey meant to avoid the payment of the lien claims; that he told the man who drove the logs, that there was nothing to detain them, and that he expressly admitted they took them, thus giving the attorney of the plaintiff to understand that he should not contest their joint liability. Precedent authority or subsequent assent will make him responsible for the wrongful acts of his associate. The conclusion therefore is, that both must be held responsible for the conversion of the property.

It only remains to determine when the time elapses in which, if ever, the lien must be asserted. The statute provides that "it shall continue sixty days after the logs, masts, spars or other lumber subject thereto, shall have arrived at their place of destination previous to being rafted for sale or manufacture." By the contract between Decker and Trickey, the former agreed to cut, haul and drive the logs to the Penobscot boom. The place then of destination specified in the contract under which the logs were cut was the Penobscot boom. That would ordinarily be considered the primary place of destination before sale or manufacture and it is specially contracted to be so here. It preceded the sale to Cushing and the manufacture of the logs by him. The logs arrived, it would seem from the evidence, at the boom in the fall, and if so, the attachments made in May cannot be sustained.

Judgment, therefore, is to be rendered in favor of the plaintiff, for such sum as upon the principles determined in this case he is entitled to recover.

*Defendants defaulted.*