## CARY BRICK CO. v. TILTON.

### (Circuit Court of Appeals, First Circuit. November 6, 1913.)

### No. 1,013.

1. SHERIFFS AND CONSTABLES (§ 138*)—EXCESSIVE ATTACHMENT—ACTION FOR DAMAGES—ELEMENTS—BURDEN OF PROOF.

In an action against a deputy sheriff for an alleged excessive levy on a quantity of brick in plaintiff's kilns, the burden was on plaintiff to show that defendant attached the brick by taking them into his possession or placing them under his control, that the value of the brick taken was more than was reasonably necessary to satisfy the demand in the writ on which the attachment was made, and that defendant had knowledge of the excessive levy and did not honestly believe that the value of the property was no more than necessary to satisfy the ad damnum in the writ and, in making the levy, acted maliciously and with intent to harrass and annoy plaintiff or to illegally compel payment of the demand.

[Ed. Note.—For other cases, see Sheriffs and Constables, Cent. Dig. §§ 290–296; Dec. Dig. § 138.*]

2. SHERIFFS AND CONSTABLES (§ 109*)—ATTACHMENT—EXCESSIVE LEVY.

While a sheriff, in attaching a debtor's personal property, must determine the amount to be taken to answer the demand in the writ, he is not bound at his peril to see that the property taken does not exceed the sum demanded, but in the performance of his duty is vested with discretion and is only required to exercise an honest judgment and act in good faith, having due regard to the circumstances of the particular case.

[Ed. Note.—For other cases, see Sheriffs and Constables, Cent. Dig. § 194; Dec. Dig. § 109.*]

3. ATTACHMENT (§ 175*)—BULKY ARTICLES—MODE OF ATTACHMENT—POSSESSION.

Rev. St. N. H. 1843, c. 184, § 14 (Pub. St. 1901, c. 220, § 16, as amended by Laws 1905, c. 43, § 1, and Laws 1907, c. 44, § 1), provides that the officer attaching grain unthreshed, hay, potatoes, and certain other designated bulky articles may leave an attested copy of the writ and of his return of such attachment thereon as in the attachment of real estate, and in such case the attachment shall not be dissolved or defeated by any neglect of the officer to retain actual possession of the property. *Held*, that such provision only prescribed an easier method of preserving attachments of various enumerated articles without changing the requirement that the officer must take the property into his possession or control in order to establish a valid attachment in the first instance; and hence the fact that an officer levying an attachment on a quantity of brick in plaintiff's kilns sought to preserve the same by leaving an attested copy of the writ with the town clerk did not indicate that the attachment did not divest plaintiff of possession and dominion over the brick attached and operate to transfer the same to the officer.

[Ed. Note.—For other cases, see Attachment, Cent. Dig. §§ 518–523; Dec. Dig. § 175.*]

4. ATTACHMENT (§ 328*)—RETURN—CONCLUSIVENESS.

A sheriff's return of an attachment is conclusive as against him; it being presumed that he has taken such possession or control of the property as is necessary to render the attachment valid.

[Ed. Note.—For other cases, see Attachment, Cent. Dig. §§ 1170–1173; Dec. Dig. § 328.*]

5. APPEAL AND ERROR (§ 1064*)—HARMLESS ERROR—INSTRUCTIONS.

Where, in an action against a deputy sheriff for an alleged excessive levy, it appeared that he attached a large quantity of brick in plaintiff's

kilns by taking the same into his possession and preserving the attachment by leaving a copy of the writ with the town clerk as authorized by Rev. St. N. H. 1843, c. 184, § 14 (Pub. St. 1901, c. 220, § 16, as amended by Laws 1905, c. 43, § 1, and Laws 1907, c. 44, § 1), an erroneous instruction that in attaching bulky articles under such act, the debtor's possession and control of the property was not taken from him, and that the attachment of plaintiff's brick was for only the amount specified in the writ irrespective of their value, was prejudicial in preventing the jury from deciding what was the value of the property attached and whether the attachment was excessive, which were necessary elements of plaintiff's action for excessive levy.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4219, 4221–4224; Dec. Dig. § 1064.*]

**6. SHERIFFS AND CONSTABLES (§ 100*)—EXCESSIVE LEVY—"MALICE."**

Negligence of a deputy sheriff in making a levy of an attachment is not "malice," and gross negligence is not the legal equivalent of willful and malicious conduct, since, while one's conduct may be so recklessly indifferent to another's welfare that it may be found to be malicious in fact, there is no presumption of law that such conduct is willful and malicious.

[Ed. Note.—For other cases, see Sheriffs and Constables, Cent. Dig. §§ 158–173; Dec. Dig. § 100;*

For other definitions, see Words and Phrases, vol. 5, pp. 4298–4304; vol. 8, pp. 7712, 7713.]

In Error to the District Court of the United States for the District of New Hampshire; Edgar Aldrich, Judge.

Action by the Cary Brick Company against Frank O. Tilton. Judgment for defendant, and plaintiff brings error. Reversed and remanded.

Charles W. Lovett, of Lynn, Mass. (N. D. A. Clarke, of Lynn, Mass., on the brief), for plaintiff in error.

Edwin G. Eastman, of Exeter, N. H. (Eastman, Scammon & Gardner, of Exeter, N. H., on the brief), for defendant in error.

Before PUTNAM, DODGE, and BINGHAM, Circuit Judges.

BINGHAM, Circuit Judge. This is an action brought by the Cary Brick Company against Frank O. Tilton, a deputy sheriff, to recover damages for an alleged excessive and illegal attachment of the plaintiff's personal property in a suit brought by one Peaslee against the plaintiff. The declaration contains three counts, as follows:

"In a plea of the case, for that, on, to wit, the fifth day of March, 1910, at Plaistow, in said county of Rockingham, said defendant, Frank O. Tilton, being then and there a deputy sheriff for said county of Rockingham, and being ordered to serve a certain writ in an action brought by Edson E. Peaslee, of said Plaistow, against said plaintiff, the Cary Brick Company, and being commanded by said writ to attach the goods or estate of said Cary Brick Company to the value of $300 did, on, to wit, March 7, 1910, levy an excessive attachment on the property of said Cary Brick Company, and attached all the brick belonging to said Cary Brick Company, in its yards at Plaistow, of the value of, to wit, $6,900, and, to wit, twenty-three times the amount of the ad damnum named by said writ. And thereby said plaintiff, the Cary Brick Company, suffered great loss and damage, and irreparable injury to its reputation, and was subjected to great inconvenience and expense because of said excessive attachment, being prevented thereby from making delivery of brick

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

to its customers at times agreed upon, and otherwise prevented from complying with its agreements, resulting in great loss to said Cary Brick Company; and the plaintiff, said Cary Brick Company, was also occasioned great loss, inconvenience, damage and expense in effecting the dissolution of said excessive attachment by being obliged to pay certain hotel bills, traveling expenses, counsel fees and other expenditures.

"And in a further plea of the case, for that, on, to wit, the fifth day of March, 1910, said defendant, Frank O. Tilton, being then and there a deputy sheriff for said county of Rockingham, and being ordered to serve a certain writ in an action brought by Edson E. Peaslee, of said Plaistow, against said Cary Brick Company to the value of $300, did, on, to wit, March 7, 1910, at said Plaistow, levy an excessive attachment upon the property of said Cary Brick Company, and did unlawfully, negligently, maliciously and oppressively attach all the brick belonging to said Cary Brick Company, in its yard at said Plaistow, of the value of, to wit, $6,900, and, to wit, twenty-three times the amount of the ad damnum named in said writ, said defendant, Frank O. Tilton. being then and there well aware of the fact that said property so attached was of the value of, to wit, twenty-three times the amount of the ad damnum named in said writ, and having ample opportunity to readily ascertain the value of said goods so attached; and the said Edson E. Peaslee and said defendant, Frank O. Tilton, was thereafter informed by said Cary Brick Company as to the value of said property so attached, and requested to dissolve said excessive attachment, but, notwithstanding such knowledge, information and request, said defendant, Frank O. Tilton, still unlawfully, negligently, maliciously, and oppressively refused and neglected to dissolve said attachment, and thereby this plaintiff, said Cary Brick Company, did and will suffer great loss and damage, and irreparable injury to his reputation and business, and has and will be subjected to great inconvenience and expense and damage because of said malicious and excessive attachment, and refusal to dissolve the same, being hindered and prevented thereby from making delivery of brick in accordance with its contracts, and otherwise hindered and prevented from complying with its agreements, and also being occasioned great loss, inconvenience, damage and expense to effect the dissolution of said illegal, negligent, malicious and oppressive attachment by being obliged to pay certain hotel bills, traveling expenses, counsel fees and other expenses.

"And in a further plea of the case, for that, on, to wit, the fifth day of March, 1910, said defendant, Frank O. Tilton, being then and there a deputy sheriff for said county of Rockingham, and being ordered to serve a certain writ in an action brought by Edson E. Peaslee, of said Plaistow, against said Cary Brick Company, and being commanded by said writ to attach the goods or estate of said Cary Brick Company to the value of $300 did, on, to wit, March 7, 1910, at said Plaistow, make an unlawful and excessive attachment of the property of said Cary Brick Company, and did negligently, unlawfully, maliciously and oppressively attach all the brick belonging to said Cary Brick Company, in its yard at said Plaistow, of the value of, to wit, $6,900, and, to wit, twenty-three times the amount of the ad damnum named in said writ, said defendant, Frank O. Tilton, being then and there well aware of the fact that said property so attached was of the value of, to wit, $6,900, and that said attachment was excessive and unlawful and would be of great damage to said Cary Brick Company, and having ample opportunity and means to readily ascertain the value of said property so attached, and of the fact that such attachment was, and would be, of great damage to said Cary Brick Company, and said Edson E. Peaslee and Frank O. Tilton were thereafter informed as to the value of the property so attached, and of the fact that the attachment was excessive, and was, and would be, of great damage to said Cary Brick Company, and were requested by said Cary Brick Company to dissolve said excessive attachment, but, notwithstanding such information and request, said defendant, Frank O. Tilton, still unlawfully, negligently, maliciously and oppressively refused and neglected to dissolve said excessive attachment. And thereby this plaintiff, said Cary Brick Company, suffered great loss and damage and inconvenience, and irreparable injury to its reputation and business, and was subjected to great inconvenience, expense and damage because of said excessive attachment and refusal to dissolve the same as aforesaid, being

prevented thereby from making delivery of brick to its customers in accordance with its contracts, and otherwise hindered and prevented from complying with its contracts and agreements, and this plaintiff, said Cary Brick Company, was also occasioned great loss, inconvenience, damage and expense to effect the dissolution of said excessive attachment, and being obliged to pay certain hotel bills, traveling expenses, counsel fees and other expenditures."

[1] No question is raised as to the sufficiency of the allegations in either of the counts in the declaration, but it will be seen from what is later said that the allegations contained in the first count do not state a good cause of action. It is plain that to entitle the plaintiff to recover under the second and third counts he must prove: (1) That the defendant placed an attachment upon the plaintiff's bricks by taking them into his possession or placing them under his control, thereby invading the plaintiff's dominion over the property. Johnson v. Farr, 60 N. H. 426. (2) That the value of the property thus taken from the plaintiff was more than was reasonably necessary to satisfy the demand in the writ upon which the attachment was made. (3) That the defendant knew the property attached was of a greater value than was reasonably necessary to satisfy the ad damnum in the writ, or that he did not honestly believe that its value was no more than necessary for that purpose. Williams v. Eastman, 208 Mass. 579, 95 N. E. 401; Friel v. Plumer, 69 N. H. 498, 501, 43 Atl. 618, 76 Am. St. Rep. 190; Ahearn v. Connell, 72 N. H. 238, 56 Atl. 189; Davis v. Webster, 59 N. H. 471. And (4) that the attachment was made maliciously, and with a purpose to harrass and annoy the plaintiff, or to illegally compel payment by it.

[2] A sheriff in attaching a debtor's personal property must determine the amount to be taken to answer the demand in the writ. He is not bound at his peril to see that the property taken does not exceed the sum demanded. In the performance of this duty the law vests in him a discretion, which he must exercise honestly and in good faith, having due regard to the circumstances of the particular case. The nature of the property attached, its liability to depreciate in value before it can be sold to satisfy the demand, and the amount it will probably bring at a sheriff's sale are some of the circumstances he is entitled to consider. If in the exercise of this discretion he acts in good faith, but makes an honest mistake to the prejudice of the debtor, he will not be liable therefor. To charge him with damages, he must be shown to have acted maliciously and without an honest belief that the property taken would bring at a sheriff's sale no more than was reasonably necessary to satisfy the ad damnum in the writ. Watson v. Todd, 5 Mass. 271, 272; Davis v. Webster, 59 N. H. 471; Williams v. Eastman, 208 Mass. 579, 581, 95 N. E. 401; Zinn v. Rice, 154 Mass. 1, 3, 27 N. E. 772, 12 L. R. A. 288; Savage v. Brewer, 16 Pick. 453, 28 Am. Dec. 255.

It appears that the defendant in serving the process in question made the following return upon the writ:

"State of New Hampshire, Rockingham—ss.:                    March 7, 1910.

"I then attached as the property of the within-named Cary Brick Company the goods and chattels following, to wit: One whole kiln of brick unopened, situated on the southerly end of yard. Also one kiln of eight whole arches

estimated to be about 200,000 of brick. All of the brick on said yard—said to belong to the said Cary Brick Company, situated on the brickyard enclosure known as the 'Cary Brickyard,' in Plaistow, in said county, occupied by said Cary Brick Company, and in order to preserve my said attachment, and within forty-eight hours thereof, I left at the dwelling house of Joseph S. Hills, the town clerk of said town of Plaistow, a true and attested copy of this writ and of this return indorsed thereon, to wit, at twenty-five minutes past ten o'clock in the forenoon of said day.    Frank O. Tilton, Deputy Sheriff."

[**3**] In 1842 the Legislature of New Hampshire enacted a law relating to the attachment of bulky articles, as follows:

"The officer attaching grain unthreshed, hay or potatoes, any lumber or fuel, bricks, stone, lime, gypsum or ore, manufacturing or other machinery, bark or hides in the process of tanning, may leave an attested copy of the writ and of his return of such attachment thereon, as in the attachment of real estate; and in such case, the attachment shall not be dissolved or defeated by any neglect of the officer to retain actual possession of the property."  Revised Statutes of N. H. c. 184, § 14.

The only material changes made in this statute since its enactment relate to an increase in the number of articles classed as bulky and . . enlargement of the time within which an attested copy of the writ and of the return of the attachment may be left with the town clerk. Public Statutes of N. H., c. 220, § 16; Laws N. H. 1905, c. 43, § 1; Laws N. H. 1907, c. 44, § 1.

The District Court, in charging the jury as to the effect of this statute upon the attachment of bulky articles, said:

"Before these statutes it used to be necessary to physically take property like a drove of cattle or a barn full of horses, taking them into possession and carrying them away, or keep officers there to preserve the attachment, but that was a great expense to a man who had a little claim. It was a great trouble to sheriffs, and it was very oppressive and inconvenient to defendants, like the brick people here, to have the property either removed in order to preserve the attachment or to keep officers there, night and day, to protect it. So the Legislature said, for purposes of convenience and in the interest of economy, that a man who thinks he has a claim against another may secure his claim by attachment by leaving a copy."

And again:

"So far as I can see, so far as it is a question of law or a question of fact, an attachment for $300 on a brickyard or on a lumberyard, or on a house or on a pile of logs on a landing, would merely operate to the amount named in the writ, the same as a mortgage would, if any of us should be unfortunate enough to put a mortgage on our house for $100; although the house may be worth a good deal more, and although the mortgage may be on a whole house, it would simply be security for $100.  That would be the incumbrance, and, so far as I can see, I do not consider that there is any incumbrance upon this property beyond the $300; but entirely aside from that an attachment could be made by a sheriff upon property less than the value named in the writ, and he might have managed it so indifferently and oppressively, like the case of attaching the belt and taking it out of the mill when there is unincumbered property which he could have attached by leaving a copy of the writ.  That would be manifestly arbitrary and an oppressive thing to do, because on the face of it it would be unreasonable.  So, I say, it is not a question altogether to be decided as an abstract question whether this writ was placed on too much property."

It appears from the above that the court in effect charged the jury that the defendant did not divest the Cary Brick Company of its

possession and dominion over the brick when he made the attachment, and that it operated as an attachment of but $300, irrespective of the value of the brick attached. The plaintiff excepted to this portion of the charge, and we are now called upon to consider whether it is correct.

In the case of Scott v. Manchester Print Works, 44 N. H. 507, 508, the state court, in considering the question whether bulky articles could be attached under section 14, c. 184, of the Revised Statutes of New Hampshire by leaving a copy of the writ and return with the town clerk, said:

"The provision is not that the attachment may be made, as in case of real estate, by leaving a copy. Rev. Stat. c. 184, § 3; Kittredge v. Bellows, 7 N. H. 427. Indeed, no attempt is made to change the mode of making the attachment, but a new and easier method of preserving it is provided. Before this statute there was not so much difficulty in making as in preserving attachments of the various articles enumerated in the fourteenth section of chapter 184. Hemmenway v. Wheeler, 14 Pick. (Mass.) 410 [25 Am. Dec. 411]; Sanderson v. Edwards, 16 Pick. (Mass.) 144; Reed v. Howard, 2 Metc. (Mass.) 38; Shepard v. Butterfield, 4 Cush. (Mass.) 425 [50 Am. Dec. 796]; Bicknell v. Trickey, 34 Me. 273; Miller v. Baker, 1 Metc. (Mass.) 82. As the statute has only provided a new mode of preserving attachments of the articles specified, it is still essential to a valid attachment of them that they should be taken into the possession or placed under the control of the officer. Odiorne v. Colley, 2 N. H. 66 [9 Am. Dec. 39]; Huntington v. Blaisdell, 2 N. H. 318, 319; Chadbourne v. Sumner, 16 N. H. 132 [41 Am. Dec. 720]."

This has been the uniform construction of this statute by the state court, as will be seen from the following cases: Bryant v. Osgood, 52 N. H. 182; Smart v. Batchelder, 57 N. H. 140; Wheeler v. Eaton, 67 N. H. 368, 39 Atl. 901. In these cases, and in many others, it is held that an attachment of the bulky articles enumerated in this statute and its amendments must be made in the same way as an attachment of other personal property—that is, the property must be taken into the possession or placed under the control of the officer—and, being thus taken into his possession and control, the attachment may be preserved by filing a copy of the writ and of the return of the attachment in the town clerk's office.

[4] This is exactly what the evidence in the case discloses the defendant did. But, further than this, it has been repeatedly held that an officer's return of an attachment is conclusive as against him, and that it is to be presumed he has taken such possession or control of the property as is necessary to render the attachment valid. Johnson v. Farr, 60 N. H. 426; Smart v. Batchelder, 57 N. H. 140, 142; Bailey v. Kimball, 26 N. H. 351.

[5] It is thus manifest the court erred when it instructed the jury that, in attaching bulky articles under this statute, the debtor's possession or control of his property is not taken from him, and that the attachment of the plaintiff's bricks was for only $300, irrespective of their value. Moreover, this instruction prevented the jury from deciding what the value of the property attached was, and whether the attachment was excessive, facts which, as we have seen, must be first ascertained before a proper disposition of the case can be made.

Numerous objections were taken by the plaintiff to the admission and

exclusion of evidence, as to many of which exceptions were not properly preserved. But however this may be, there is no occasion for considering them at this time, for upon another trial the same questions may not arise.

[6] The requests for instructions relate largely to the question of damages. The instructions of the court upon this subject are not before us. Whatever they were or should have been they could not have harmed the plaintiff, as the jury did not consider the question of damages; their verdict being for the defendant. It may be said, however, with reference to these requests, that negligence is not malice, and that gross negligence is not the legal equivalent of willful and malicious conduct; that, while one's conduct may be so ı .cklessly indifferent to another's welfare that it may be found to be malicious in fact, there is no presumption of law that such conduct is willful and malicious. Shackett v. Bickford, 74 N. H. 57, 65 Atl. 252, 7 L. R. A. (N. S.) 646, 124 Am. St. Rep. 933; Derry v. Peek, 14 App. Cas. 337; Conway Bank v. Pease, 76 N. H. 319, 323, 331, 82 Atl. 1068.

The judgment of the District Court is reversed, the verdict is set aside, and the case is remanded to that court for further proceedings in conformity with this opinion; and the plaintiff in error recovers its costs of appeal.