[Civ. No. 3537.   First Appellate District, Division One.—September 10, 1920.]

ANNA ST. JOHN WHITNEY, Appellant, v. THE WEST COAST LIFE INSURANCE COMPANY (a Corporation), Respondent.

[1] LAW OF CASE—SECOND TRIAL—ACTION ON LIFE INSURANCE POLICY —FRAUD OF INSURED.—Where on the second trial of an action to recover on a life insurance policy there was nothing in the evidence of the witnesses who did not testify at the first trial to change the effect of the uncontradicted testimony which the appellate court held on the first appeal clearly established the fact that the insured was guilty of fraud in securing the policy, the decision on the former appeal was the law of the case and the trial court properly directed the jury to bring in a verdict for the defendant.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.   Daniel C. Deasy, Judge. Affirmed.

The facts are stated in the opinion of the court.

Norman A. Eisner for Appellant.

Myrick & Deering and Scott for Respondent.

WASTE, P. J.—Plaintiff brought this action to recover upon a life insurance policy for ten thousand dollars, issued by the defendant on the life of her husband and in her favor. In the first trial of the cause a verdict was rendered in favor of the plaintiff. A motion for a new trial was made and denied. On appeal to the supreme court, the judgment and order were reversed. (*Whitney* v. *West Coast Life Ins. Co.*, 177 Cal. 74, [169 Pac. 997].) On the second trial the court directed the jury to bring in a verdict in favor of the defendant, which was done, and judgment was thereupon entered. A motion for a new trial was made and denied and the plaintiff has appealed.

Mr. Whitney died June 10, 1914, of acute myocarditis, a disease of the heart. The defense at the first trial was based upon the assertion that Arthur L. Whitney, the assured, made false representations in his application to the defendant for insurance, and was guilty of fraud in securing the policy, in that he concealed from the defendant's medical examiner the fact that before making his application, he had consulted certain physicians as to his physical condition, and failed to report the results of their examination, as given to him. By the terms of the policy all insurance thereunder was based upon the written and printed application therefor, which, by attached copy, was made a part of the contract. In his answers to questions contained in the application for insurance, Mr. Whitney made, among others, the following representations:

"Q. Have you now or have you ever had shortness of breath? A. No.

"Q. Have you now or have you ever had disease or palpitation of the heart? A. No.

"Q. Give particulars of any injury or illness or attendance of physician that may have occurred during the past seven years. A. Burn of arm and chest. Dates, 1911. Duration, one week. Physician consulted, Dr. Chidester."

Whitney had been afflicted with a shortness of breath, which seemed to him so alarming as to cause him to seek the advice of a physician some four months prior to the

time when he sought life insurance. He was examined by Dr. Cheney, who informed him that he was suffering from myocarditis, a weakness of the heart, an incurable condition, which would persist as long as the patient lived. He also consulted Dr. Hewlett, who advised him that he probably had weakness of his heart muscles. After a careful review of the evidence and a consideration of the authorities relied upon by the respondent on the first appeal, the supreme court held that, notwithstanding the liberal rules which properly favor the upholding of verdicts of the sort rendered in this case, the fact remained that by the uncontradicted testimony of two physicians of standing, Mr. Whitney was shown to have concealed facts about his condition and his consultations with medical men, which could not have been unconsciously withheld, and the withholding of which information clearly amounted to fraud. The court then said, in reversing the judgment and order denying the motion for a new trial: "We are, therefore, forced to the conclusion that he consciously and intentionally withheld from the examining physician information which might have prevented, nay, probably would have prevented, the issuance to him of a policy of insurance. Of course, we cannot tell what new evidence may be forthcoming if the cause be retried, but unless some very positive proof be available to overcome the necessary deductions arising from the conduct of the assured, it would be the duty of the trial court to decline to submit the question of fact to a jury."

[1] Much of the testimony introduced at the first trial was read into the record on the second hearing, and practically the identical evidence considered by the supreme court appears to have been before the trial court at the conclusion of the case. Four witnesses who had not appeared in the first trial testified at the second. Dr. Ebright, produced by the plaintiff, testified that he was a personal friend of Mr. Whitney, knew him intimately, met him frequently, and noticed nothing wrong about decedent, and never heard him complain of his heart or shortness of breath. When examined as an expert, he gave as his opinion that Whitney was suffering from indigestion, and not from heart disease. If that were true, we are unable to perceive how the testimony of Dr. Ebright in any way assists the appellant. On the contrary, it tends to add to the gravity of the conceal-

ment alleged to have been perpetrated by the decedent, for in his application he also stated that he had never had either dyspepsia or indigestion. Dr. Ebright would not say that the decedent did not have myocarditis, and admitted that Dr. Cheney and Dr. Hewlett were "probably accurate" in their diagnosis. The other three witnesses, Hand, Hardy, and Peterson, were intimate acquaintances of the decedent, Whitney, and merely testified to the fact that Whitney appeared to them to be in good health, and that they never observed him exhibiting any symptoms of shortness of breath. There is nothing in the evidence of any of these witnesses to change, or in the least moderate the effect of, the uncontradicted testimony which the supreme court held on the former appeal so clearly established the fact that the insured was guilty of fraud in securing the policy. The facts and the evidence are the same upon both appeals, with the immaterial exception noted. The decision in the former appeal therefore becomes the law in this. (*Snyder* v. *Jack*, 140 Cal. 584, 586, [74 Pac. 139, 355]; *Blankenship* v. *Whaley*, 142 Cal. 566, 568, [76 Pac. 235]; *Kent* v. *Williams*, 146 Cal. 3, 7, [79 Pac. 527]; *Brett* v. *S. H. Frank & Co.*, 162 Cal. 735, 739, [124 Pac. 437].) There was nothing new in the case. The views expressed by the supreme court on the former appeal must control the law of the case; and it was the duty of the trial court to give effect to those views by declining to submit the question to the jury, if convinced that the evidence was the same upon both trials. (*Muller* v. *Swanton*, 17 Cal. App. 232, 235, [119 Pac. 200].)

The outstanding fact remains unchallenged that Mr. Whitney died of myocarditis. In directing the jury to return a verdict for the defendant, the trial court said: "There has been no evidence introduced which would explain in any way the reason why the decedent did not disclose to the company the information that he had been consulting, or had been attended by Dr. Cheney and Dr. Hewlett. And in my opinion that is the point upon which the case is reversed : . . ." We are satisfied the trial court was correct in both its conclusions. No good can be accomplished by a review of the authorities cited by the appellant. Every contention made, which seems worthy of consideration, was decided against her by the supreme court, on the appeal following the first trial. The decision of that court so con-

vincingly settles the matter, that we feel further discussion is unnecessary.

The judgment and order are affirmed.

Beasly, J., *pro tem.,* and Richards, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on November 9, 1920.

All the Justices concurred.