[Civ. No. 4416. Second Appellate District, Division Two.—June 17, 1927.]

JOHN T. IRILARRY, Appellant, v. JAMES C. BYERS et al., Respondents.

Wright & McKee, P. A. Bergerot and A. P. Dessouslavy for Appellant.

Eugene Daney and G. F. McCulloch for Respondents.

CRAIG, J.—From the admitted facts in this case it appears that on and prior to May 3, 1918, the respondent James C. Byers was sheriff of San Diego County, and that one James Kennedy was a contractor engaged in the construction of the then uncompleted Otay dam across a certain gorge, in said county; that Kennedy was in possession of, and owned an interest in, a large quantity of machinery, tools, implements, and paraphernalia, including one Marion steam shovel, Model 36, which were used in such construction work. On May 3, 1918, a writ of attachment issued out of the superior court of Los Angeles County in an action pending therein entitled P. R. Williams *versus* Kennedy and another, which writ was delivered to the respondent sheriff on May 4, 1918, and was levied upon all of the above-mentioned property on May 6, 1918. On the date last mentioned, but following the levy of the Williams attachment, the same officer levied upon said property a writ of attachment issued out of the superior court of the city and county of San Francisco, which latter writ was not received by the sheriff until the date of levy. The suit last mentioned was entitled *Prosper Wolf* v. *James Kennedy*. It was stipulated by the parties that as between these two the Williams attachment rightfully received priority when levied.

On or about June 26, 1918, Prosper Wolf assigned, transferred, and set over unto the appellant herein the cause of action upon which this suit was founded, and Irilarry instituted this action against the respondent sheriff for the sum of $1,859.91, alleged that at all times since November 16, 1918, his attachment was a first lien upon the steam shovel and that ever since the last-named date to October 14, 1919, he had paid the entire expense of keeping and caring for said shovel, when and as such payment was demanded of him, in said action of *Wolf* v. *Kennedy*, and that on and prior to October 14, 1919, such expense was repaid in full by him to on or about November 9, 1919; that at all times from November 16, 1918, to October 14, 1919, the sheriff retained the custody of said shovel for the exclusive benefit of the plaintiff in said action of *Wolf* v. *Kennedy*. The respondents denied by their answer the foregoing allegations and alleged that the levy of Irilarry's writ of attachment

from May 6, 1918, to the fourteenth day of October, 1919, and the levy of the writ of execution from January 9, 1919, to October 14, 1919, was at all times subject to the prior lien, attachment, and execution of Williams.

At the trial appellant relied entirely upon the testimony of Byers and a deputy sheriff and correspondence between the sheriff and counsel for appellant, from which it appears that appellant's counsel denied any knowledge of the fact that the keeper's fees had been wholly assumed by Williams until the release of the property other than the steam shovel from the Williams writ.

From the sixth day of May, 1918, to the date of the sale under execution a keeper was continuously in charge of the property, except such as was released upon third party claims. On November 13, 1918, the sheriff notified counsel for appellant in writing as follows:

"Referring again to the matter of keeper at the Otay dam, will say that the plaintiff, Williams, is in arrears for keeper's fees in the suit of *Williams* v. *Ball and Kennedy,* and I have notified him that *unless fees were deposited* immediately I would feel it my duty to *dispense with the keeper* on next Saturday. If you desire me to *maintain the keeper* please send me a deposit of $150.00."

To this counsel replied by a letter dated November 19, 1918, in part:

"I understand, of course, that Williams not having kept up the payment of keeper's fees, the levy in *Wolf* v. *Kennedy has now become a first lien on every part of the attached property.*"

Byers swore that he levied both attachments upon all of Kennedy's property; that the steam shovel was exceedingly large and cumbersome, that it was so situated that it could not well have been moved until completion of the dam; that "it was on the east side of the uncompleted dam, across the gorge," and "the only way it could finally be moved was to bring it out across the top of the dam"; that he did not deem it necessary that a keeper should be continued in charge of it, but that if the parties desired that all of the property be kept in custody, he required a deposit; that he was instructed to and did release all except the shovel from the Williams attachment, but that this apparatus was never released therefrom; and that counsel for appellant paid all keeper's fees following such partial

release, and thereafter claimed priority of their levy as to all of the property, including the shovel. At the trial counsel for appellant stated their contention, which is here urged upon appeal, as follows:

"We are making no claim that the Williams attachment was not prior originally. It may be so stipulated. . . . There is no question but what Mr. Williams could abandon or release his attachment. Now he perhaps would be the only one in responsibility who could do that. The sheriff himself might cause the lien of that attachment to be lost by his improper action, or by his action whether proper or improper. In either event, if the lien was abandoned or released by Williams, or the lien of Williams attachment was lost by reason of the sheriff's action, then the Irilarry attachment came in as the first attaching lien upon the steam shovel. . . . We contend that the correspondence shows that by reason of the failure of Mr. Williams to pay any additional fee, the sheriff notified Irilarry that the *property would be released* unless on a certain date he, Irilarry, put up the fees. It is our contention that the only way in which the sheriff could keep the custody of this attached property was by having a keeper in charge, that is, taking it into his actual custody."

As appears from the notice to appellant's counsel, the sheriff did not state that he would release the property from attachment, but that he would "dispense with the keeper," unless a deposit were immediately made. ■ There is no necessity for an actual handling of heavy and unmanageable articles to levy or maintain an attachment. (*Dreisach* v. *Braden,* 40 Cal. App. 407 [181 Pac. 262].) The mere service of a writ upon the defendant, as in the case of attachment of real estate, is sufficient. (*Rudolph* v. *Saunders,* 111 Cal. 233 [43 Pac. 619].) ■ It is not requisite to the attachment of personal property not capable of manual delivery that it be taken into custody by the sheriff, nor that having been taken by him, his possession be retained. (Code Civ. Proc., sec. 542, subd. 5.) ■ It is obvious that as the evidence shows this steam shovel to have been situated, it was not then capable of manual delivery.

Appellant cites no authority holding contrary to this view. *O'Connor* v. *Blake,* 29 Cal. 313, merely held that

the sheriff having custody of attached property, under one levy, need not make a second seizure under subsequently issued writs in order to establish valid liens thereunder. In *Smart* v. *Sosey,* 49 Cal. App. 232 [193 Pac. 167], the personal property was of a readily movable character. Also, in *Braden* v. *Cline,* 51 Cal. App. 424 [196 Pac. 913], it is not contended that the chattels were not readily movable and capable of manual delivery. Another case upon which appellant attempts to rely is *Cudahy* v. *Rhinehart,* 133 N. Y. 248 [30 N. E. 1004], wherein it was shown that the property which the sheriff was instructed to attach was not found; that subsequent attaching creditors levied upon other property, and that when asked to furnish an *indemnity bond* if the plaintiffs desired a lien upon the property last mentioned, they refused to do so, but they did furnish a bond with amended instructions supplementing the previous understanding that the bond was not to be treated as having any relation to the property previously seized under the several attachments, and that it was given for a specific and different purpose. It is not here contended that the Williams undertaking was ever in question. The property was first seized and a keeper placed in charge under his writ, and, having released his attachment as to all property other than the dredger, and deeming a keeper unnecessary as to that, because of its bulk, weight, and situation, his refusal to continue paying the keeper cannot be said to have constituted a release of his attachment upon that which remained. Since all of the property was under the control of one keeper, it was presumably attached and held together.

Hence, since Williams' lien of attachment was first received by the levying officer, all property other than the steam shovel having been released therefrom, and it having been held and sold under such lien for more than the amount of Williams' judgment, interest, and costs, the balance was properly payable upon the Wolf judgment. Since, as we have seen, the Williams attachment was not released, the judgment of the lower court must be affirmed.

Judgment affirmed.

Works, P. J., and Thompson, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on July 15, 1927.